**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Global IP Holdings, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 3043 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Verano Holdings Corp., and<br>Verano Holdings LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff alleges that Defendants have infringed two of their patents. The parties dispute four claim terms. Regarding these terms, the parties submitted written claim construction briefs at Docket Nos. 46, 49, and 53, and the Court held a claim construction hearing on September 28, 2026. This opinion sets forth the Court's construction of the disputed terms.

**Legal Standard**

"Claim construction is a question of law." *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1363 (Fed. Cir. 2014). The "starting point" for claim construction is "the words of the claim itself." *Id.* "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Starhome GmbH v. AT & T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014) (citations omitted). "There are only two exceptions to this general rule: (1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* (citations omitted). "Although courts are permitted to consider extrinsic evidence, such as expert testimony, dictionaries, and treatises, . . . such evidence is generally of less significance than the

intrinsic record." *Takeda*, 743 F.3d at 1363. "Ultimately, the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* (citations omitted).

## Background

Plaintiff owns US Patent No. 10,507,407 (the '407 Patent) and US Patent No. 10,814,248 (the '248 Patent) (together, the "Asserted Patents"). The Asserted Patents both claim a "system, machines and methods for extracting select moieties, flavonoids, and essential oils from plant material without co-extracting chlorophyll, lipids and other undesirable constituents from plants." R. 1-1; R. 1-2.

Claim 1 of the '407 Patent claims the following, with the disputed terms in bold:

> **1.** A safer and more reliable extraction process for extracting a plant substrate comprising, in combination,
>
> (i) pre-processing comprising lowering the temperature of a solvent to a range of –30 degrees C. and –50 degrees C.,
>
> (ii) contacting at –30 degrees C. to –50 degrees C. wherein there is a contacting time between the plant substrate and the solvent to create an emulsion,
>
> (iii) evaporating for reduction of the emulsion **by means of atmospheric evaporation of the solvent**,
>
> (iv) recovering for recovery of the solvent from the emulsion,
>
> (v) **purging** whereby a resultory extract is **substantially free of any lipids and chlorophyll**.

Claim 1 of the '248 Patent claims the following, with the disputed terms in bold:

> **1.** A safer and more reliable extraction process for extracting cannabinoids and to reduce chlorophyll and wax co-extraction from a cannabis, or hemp plant substrate comprising, wherein the process excludes use of liquid carbon dioxide, in combination,

(i) pre-processing comprising lowering the temperature of a solvent to a range of –30 degrees C. and –50 degrees C.,

(ii) contacting at –30 degrees C. to –50 degrees C. wherein there is a contacting time between the cannabis plant substrate and the solvent to create an emulsion,

(iii) evaporating for reduction of the emulsion **by means of atmospheric evaporation of the solvent**,

(iv) recovering for recovery of the solvent from the emulsion,

(v) **purging under vacuum to remove remaining solvent from the extract** whereby a resultory extract is **substantially free of any lipids and chlorophyll**,

**wherein optionally,**

(a) the solvent is 95% ethanol and 5% of a solvent that is another solvent that does not comprise ethanol, or

(b) the solvent is at least one solvent-like material selected from the group consisting essentially of heptane, hexane, isopropyl alcohol, and menthanol [sic].

**Discussion**

**1. "by means of atmospheric evaporation of the solvent"**

Plaintiff's Asserted Patents have been challenged in the prior action *Capna IP Capital LLC v. Root Sciences*, 23-cv-282 (W.D. Wash.). During the pendency of that prior action, Capna assigned the Asserted Patents to Global IP Holdings (the Plaintiff in this case), and the Washington District Court granted Capna's motion to substitute Global IP Holdings as the plaintiff for that action. R. 46-1 at 261. Accordingly, the positions and arguments made by Capna in that lawsuit became the positions and arguments of Plaintiff. *See id.* The Court notes that, in the prior action, Capna and Plaintiff were represented by the same counsel who represents Plaintiff in this action. *Cf.* R. 46-1 at 215 *with* R. 49 at 28.

Also in the prior action, this same claim term was challenged in the Asserted Patents. Capna's (and thus Plaintiff's) proposed construction of the term "by means of atmospheric evaporation" was "exposing to atmospheric conditions and allowing the solvent to evaporate." R.46-1 at 202. Capna argued: "One of ordinary skill . . . understands that atmospheric evaporation is 'air evaporation with loss of vapor to the atmosphere.' One of ordinary skill thus knows that the means for accomplishing is to expose to 'air' and to allow the 'loss of vapors to the atmosphere.' There is nothing needing definition and nothing indefinite." *Id.* at 203.

In this case, Plaintiff asserts as follows: "Plaintiff's position is that the plain and ordinary meaning of 'atmospheric evaporation' in the context of these patents refers to evaporation *within* the atmosphere existing in the closed system. It is unquestionably true that the patents describe a closed system in which the solvent can be evaporated and recaptured for re-use. The closed system therefore has its own 'atmosphere.'" R. 49 at 11.

The Court is concerned that Plaintiff's position in the prior action is markedly different from its position in this case. Indeed, Plaintiff's position in the prior action appears to contradict its position in this case and appears to be consistent with Defendant's position in this case—Defendant's position being that the claim term should be constructed as "by evaporating the solvent at ambient (room) air pressure." R. 58 at 1.

The Court seeks further briefing from the parties on this issue. The Court requests that the parties submit a joint statement in which: (1) Plaintiff addresses this discrepancy, and (2) the parties set forth their respective position on whether, for the purposes of this case, they would agree to using Plaintiff's proposed construction from the prior case. The parties shall submit a joint statement to the Court that addresses these issues.

**2. "substantially free of any lipids and chlorophyll"**

The Court has considered the language of the claims, the parties' briefs on the issue, and the parties' oral arguments. On this basis, the Court finds that the Asserted Patents set forth methods claims. *See* R. 1-1 at 1, 8 ('407 Patent describing "methods to reduce chlorophyll co-extraction" and claim 1 setting forth a "safer and more reliable extraction process"); *see* R. 1-2 at 1, 17 ('248 Patent stating the same). Focusing on the phrase in Claim 1 of the Asserted Patents—"whereby a resultory extract is substantially free of any lipids and chlorophyll"—the Court finds that this phrase is a "whereby clause" that expresses the intended result of the method, and that as a "whereby clause," this phrase is not given patentable weight. *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) ("A whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited."). The Asserted Patents protect the following steps: pre-processing, contacting, evaporating, recovering, and purging. The patents do not protect the contents of the resultory extract. The patents merely posit that if a person were to follow the five steps, they would receive such an extract. As such, there is no patentable weight to the fact that the resultory extract is "substantially free of any lipids and chlorophyll."

District courts "are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Because the whereby clause has no patentable weight, construing the clause is not necessary to resolve the controversy between the parties. The Court thus declines to construe the whereby clause.

### 3. "purging [under vacuum to remove remaining solvent from the extract]"

Claim 1 of the '407 Patent claims only "purging" while Claim 1 of the '248 Patent claims "purging under vacuum." Defendants argue, for both patents, that this term should be construed as "removing under vacuum lipids, chlorophylls, and remaining solvent from the emulsion after the evaporation step." R. 58 at 1.

First, the Court addresses Defendants' proposal to include the limitation "under vacuum" in the '407 Patent. Claim 12 of the '407 Patent is a dependent claim to Claim 1. Claim 12 states: "The process of claim 1, **wherein the purging step occurs under vacuum** to remove remaining solvent from the emulsion." R. 1-1 at 8 (emphasis added). Reading "under vacuum" into Claim 1 would render Claim 12 meaningless and is thus contrary to established principles of claim differentiation. *See SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1302 (Fed. Cir. 2003) (citations omitted) ("[T]he doctrine of claim differentiation . . . create[s] a presumption that each claim in the patent has a different scope . . . [and this] presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim."); *see also Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1378 (Fed. Cir. 2018) (citation omitted) ("Any construction of claim 1 that required [the proffered construction] would render these dependent claims meaningless [and] [s]uch a construction is disfavored."). As such, the Court will not read "under vacuum" into Claim 1 of the '407 Patent.

Second, the Court addresses Defendant's proposal to include the limitation of "remov[ing] . . . lipids [and] chlorophylls" in both patents. The Court finds that this proposal contradicts the language found elsewhere in the patents. As the Asserted Patents state in their respective abstracts, the patents protect a "system, machines and methods for extracting select moieties, flavonoids,

and essential oils from plant material **without co-extracting chlorophyll, lipids** and other undesirable constituents from plants." R. 1-1 at 1 (emphasis added); R. 1-2 at 1 (emphasis added). And as the patents state in the specification, the "draining process must be carried out in the preferred temperature range . . . **to exclude the co-extraction of lipids and chlorophyll**." R. 1-1 at 6 (emphasis added); R. 1-2 at 8 (emphasis added). The Asserted Patents do not state that chlorophyll and lipids are initially extracted and then removed at the end. Instead, they clearly state that by applying the temperature methods taught in Claim 1, chlorophyll and lipids are never extracted in the first place. It thus contradicts the language of the patents to construe the purging step as "remov[ing] . . . lipids [and] chlorophylls" that were never present to begin with.

Additionally, based on the parties' presentations at oral argument, the Court finds that a person of ordinary skill in the art would understand that the purpose of the purging step is to remove the solvent. A person of ordinary skill in the art would further understand that, during the purging step, it would not be possible to remove chlorophyll and lipids. Defendants conceded during oral argument that they had provided a "tortured definition" for this term and that it may not "make sense" to remove chlorophyll and lipids during the purging step. As such, the Court will not read the limitation of "remov[ing] . . . lipids [and] chlorophylls" into this claim term.

Defendants began oral argument by showing the Court a YouTube video that, according to Defendants, has been viewed "millions of times." The target audience of the video is an unsophisticated viewer who wishes to extract cannabis oil in his own home. The video clearly and simply demonstrated a purging step. R. 46-1 at 304–05. The Court thus finds that the plain and ordinary meaning of this term is sufficiently definite because a person of ordinary skill in the field would understand the meaning and would not require further context. In conclusion, this claim term shall be construed according to its plain and ordinary meaning.

**4. "wherein optionally"**

At the end of Claim 1 of the '248 Patent, it states: "wherein optionally, (a) the solvent is 95% ethanol and 5% of a solvent that is another solvent that does not comprise ethanol, or (b) the solvent is at least one solvent-like material selected from the group consisting essentially of heptane, hexane, isopropyl alcohol, and menthanol [sic]." R. 1-2 at 17. Plaintiff argues that the Court should construe "optional" such that the claim does not require the subsequent (a) and (b) conditions. R. 58 at 2. Defendants argue that the Court should construe "optional" such that the claim requires either the (a) or (b) condition. *Id.*

First, the plain and ordinary meaning of "optional" supports Plaintiff's position. As a general rule, when the "word" optional is used before a condition in a patent, the subsequent condition is not required. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) ("As a matter of linguistic precision, optional elements do not narrow the claim because they can always be omitted."); *see also Cadence Pharms. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015) ("The plain and ordinary meaning of 'optionally . . . topped . . . and placed' is that both the topping and placing steps are optional.").

Second, the specification supports Plaintiff's position. The specification states: "In a preferred non-limiting embodiment, the term solvent as used herein should be understood to describe 100% grain ethanol." R. 1-2 at 6. If the Court were to adopt Defendant's proposed construction that Claim 1 required either the (a) or (b) condition, then it would become impossible to practice the patent with 100% grain alcohol. In other words, Defendant's proposed construction reads the cited portion of the specification out of existence. And, as stated above, the words of the claim should be read in the context of the specification.

Third, the prosecution history is insufficient to disavow the claim language and the specification. Regarding the prosecution history, Defendants point out that the only difference between the language of Claim 1 in the ’407 Patent and of Claim 1 in the initial application for the ’248 Patent is the “wherein optionally” clause. R. 46 at 27. Defendants argue that because the “wherein optionally” clause is the only difference in the claim language, the patentee must have intended the clause to be a limitation so as to differentiate the claims and avoid the bar on double patenting. *Id.* At best, this argument is speculative. There is no concrete evidence that this was the patentee’s intention. To the contrary, the specification for the initial application of the ’248 Patent states: “In a preferred non-limiting embodiment, the term solvent as used herein should be understood to describe 100% grain ethanol.” R. 45 at 308. Defendant’s argument is undermined by the specification because (1) Defendant’s position reads the cited portion of the specification out of existence (for the same reason discussed above regarding the final ’248 Patent), and (2) the specification differentiates Claim 1 of ’407 Patent (that ***requires*** 100% grain ethanol, R. 1-1 at 5) from Claim 1 of the initial application for the ’248 Patent (which does not).[1]

Defendants identify another section of the prosecution history where the Patent Examiner rejected the initial application of the ’248 Patent on the basis that the “wherein optionally” clause “[did] not reasonably provide enablement.” R. 45 at 383. Defendants argue that the Patent Examiner would not have issued this enablement rejection if the Examiner hadn’t believed that the “wherein optionally” clause was a required claim limitation. R. 46 at 28. But Defendants fail to provide support for their position that a Patent Examiner would never issue an enablement rejection for an optional claim term.

[1] The fact that the specification differentiates the claims demonstrates why Defendants’ argument is speculative. The patentee could have intended to differentiate the claims through any number of minor differences between the ’407 Patent and the initial application for the ’248 Patent.

Finally, Defendants identify a section of the prosecution history where the Patent Examiner rejected a different predecessor application for the '248 Patent, and wrote:

> The difference between the recited claims of the instant application and the recited claims of '407; is that **the instant claims use a solvent** that is (a) 95% ethanol and 5% of a solvent that is another solvent that does not comprise ethanol, or (b) the solvent is at least one solvent-like material selected from the group consisting essentially of heptane, hexane, isopropyl alcohol, or methanol.

R. 45 at 462 (emphasis added). Defendants contend that the language of this paragraph demonstrates that the Patent Examiner interpreted the "wherein optionally" clause to be a required limitation. R. 46 at 29. Critically, however, the Patent Examiner never explicitly states that the "wherein optionally" clause is required. Instead, the language of the paragraph is ambiguous and can be reasonably interpreted in at least two ways, that: one, the instant claims ***may*** use a solvent [that comports with the "wherein optionally" clause] . . .; or two, the instant claims ***must*** use a solvent [that comports with the "wherein optionally" clause]. Because the language is ambiguous, the patentee's failure to reject it does not constitute "clear and unmistakable" disavowal sufficient to override the plain and ordinary meaning of the claim terms and specification. *See Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (citations omitted) ("When the prosecution history is used solely to support a conclusion of patentee disclaimer [of the claim language], the standard for justifying the conclusion is a high one. For prosecution disclaimer to attach, . . . the alleged disavowing actions or statements made during prosecution be both clear and unmistakable. Where the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations, [the Federal Circuit has] declined to find prosecution disclaimer.").

In conclusion, the Court construes "optional" such that the claim does not require the subsequent (a) and (b) conditions.

## Conclusion

The claims are construed as stated above. By 10/30/26, the parties shall submit a joint statement that sets forth the following: (1) regarding the term "atmospheric evaporation," Plaintiff shall address the discrepancy between its position in the prior *Capna* case and its position in this case; (2) regarding the term "atmospheric evaporation," the parties shall set forth their respective position on whether, for the purposes of this case, they would agree to using Plaintiff's proposed construction from the prior *Capna* case; (3) the parties shall provide an update on whether they have been able to identify the potentially dispositive temperature information, as discussed during oral argument; and (4) whether, in the light of this ruling, the parties believe a settlement conference would be productive. Finally, the parties shall continue under supervision of the Magistrate Judge with discovery and, if applicable, a settlement conference.

**SO ORDERED.**

**ENTERED: October 19, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**